**NOT FOR PUBLICATION**

> **FILED**
> JAMES J. WALDRON, CLERK
>
> **JUNE 4, 2008**
>
> U.S. BANKRUPTCY COURT
> NEWARK, N.J.
> BY:  s/ Ronnie Plasner, DEPUTY

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

**In Re: SHORT HILLS CATERERS, INC.**,

Debtor.

Case No.: 08-18604 (DHS)

Judge: Donald H. Steckroth, U.S.B.J.

**OPINION**

**APPEARANCES:**

Wasserman, Jurista & Stolz, P.C.
Steven Z. Jurista, Esq.
Scott S. Rever, Esq.
225 Millburn Avenue – Suite 207
P.O. Box 1029
Millburn, New Jersey 07041
*Counsel for Steven Z. Jurista, Assignee for the*
*Benefit of Creditors*


Hellring Lindeman Goldstein & Siegal LLP
Richard B. Honig, Esq.
One Gateway Center
Newark, New Jersey 07102-5386
*Counsel for Short Hills Caterers, Inc.*


Middlebrooks Shapiro & Nachbar, P.C.
Stuart M. Nachbar, Esq.
Melinda D. Middlebrooks, Esq.
1767 Morris Avenue
Suite 2A
Union, New Jersey 07083-1716
*Counsel for Petitioning Creditors Stuart*
*Wainberg, Jeffrey Susskind, and Scott Miller*

**THE HONORABLE DONALD H. STECKROTH, BANKRUPTCY JUDGE**

Before the Court is the motion of Steven Z. Jurista, Assignee for the Benefit of Creditors ("Assignee") for Short Hills Caterers, Inc. ("Short Hills Caterers"), to dismiss the involuntary Chapter 7 bankruptcy petition filed against it by creditors Stuart Wainberg, Jeffrey Susskind, and Scott Miller ("Petitioning Creditors"), or in the alternative, for abstention. The Petitioning Creditors filed opposition to the motion. Oral argument was heard on May 27, 2008, which was also the return date for the Petitioning Creditors' motion to appoint a Chapter 7 trustee ("Trustee motion"). The Trustee motion was opposed by Short Hills Caterers and the Assignee.

Short Hills Caterers was a kosher catering facility located in Short Hills, New Jersey, typically serving as a venue for weddings and bar and bat mitzvahs. Michael Bienstock is the principal of Short Hills Caterers. Short Hills Caterers retained Hellring Lindeman Goldstein & Siegal LLP ("Hellring") to advise on insolvency matters including the institution of an Assignment for the Benefit of Creditors ("ABC"). A Deed of Assignment was executed on April 18, 2008 and delivered to Jurista as Assignee.

Since April 18, 2008, the Assignee has investigated and gathered information about the estate by speaking with Bienstock at length about the company's history, financials, and the reasons for the insolvency. In addition, the Assignee has also met with management and the bookkeeping staff. Specifically, the Assignee facilitated payment of payroll, insurance, and conducted an inventory of the physical assets utilizing A. Atkins Appraisal Corporation. The Assignee addressed the disposal of the perishable food in accordance with local health regulations, reinstated the electrical service through Jersey Central Power & Light to permit potential purchasers to inspect the premises, secured the building, and took possession and responsibility for the facility. Furthermore, to minimize

expenses, the Assignee terminated electric service to the air conditioning and refrigeration equipment and had the insurance changed to a "vacant building" policy.

On April 22, 2008, the Assignee sent a letter to known creditors and parties in interest attaching Proof of Claim forms and a Notice of Assignment and advised each creditor of the ABC process and the steps forthcoming in the proceeding. On May 5, 2008, he received a phone call from Stuart Nachbar, Esq., counsel to the Petitioning Creditors, inquiring as to the status of the ABC proceeding and provided Nachbar with the requested information. On May 7, 2008, the Assignee sent a subsequent letter to all creditors advising of the progress of the ABC proceeding and provided information giving assurance that their claims would be compensated. On May 8, 2008, the Petitioning Creditors filed the instant involuntary Chapter 7 proceeding.

The assets of Short Hills Caterers include: (i) the primary building located on Morris Avenue, in Short Hills, New Jersey, leased by Farley Realty, LLC wherein the business operates; (ii) three adjacent lots used for parking owned by BST Realty, a wholly-owned subsidiary of Short Hills Caterers; and (iii) furniture, fixtures and equipment. The Assignee currently holds $118,218.04 from the company's bank account, physical assets approximately appraised at $103,526.00, and three vacant lots appraised at $1.1 million. The Assignee conservatively estimates that Short Hills Caterers is worth at least $1 million. The liabilities total approximately $450,000.00 in creditors' claims and a tax claim by the State of New Jersey in the amount of $20,000.00. The Assignee advised all creditors to file proofs of claim attaching documentation of their debt including proof of deposit payments and those are still being received and evaluated. The Assignee submits that the number of deposit creditors who could assert consequential damages are limited as only a few had finalized arrangements.

As part of the ABC process, the Assignee's goal is to facilitate a sale of the business's assets. To date, he has shown the facility to approximately eight (8) groups and has received a letter of intent from one potential purchaser in the amount of $800,000.00. Furthermore, the Assignee maintains that the potential purchaser's initial offer of $800,000.00 plus the $118,000.00 cash asset is sufficient to satisfy all creditors' claims and the administration costs. The Assignee advised the Court that this is only an initial offer and once a stalking horse agreement is finalized, that offer will be subject to notice to creditors and potential higher offers as required under N.J.S.A. 2A:19-18-19. If this process does not materialize into a sale, the Assignee will then proceed to auction. Moreover, the Assignee suggests that he may utilize N.J.S.A. 2A:19-34, which provides discretion to the state court to direct partial distribution of available assets to creditors whose claims are undisputed.

The Assignee submits that the involuntary bankruptcy has limited his efforts to complete the ABC and the sale process. The only actions he has taken since May 8, 2008 are to assure that the assets, records, and insurance are secure. He further argues that a Chapter 7 proceeding will create an additional layer of administration, while the ABC process allows for discovery, preference actions and fraudulent conveyance actions under the state statute. The Assignee maintains confidence that a liquidation of assets would satisfy all outstanding creditors and possibly alleviate the need to pursue potential avoidance actions. Thus, the Assignee argues the ABC process is in the best interest of the creditors and this Court should dismiss the involuntary Chapter 7 proceeding and abstain pursuant to Section 305 of the Bankruptcy Code.[1]

---

[1] Unless otherwise indicated, the foregoing factual statements were gleaned from the *Certification of Steven Z. Jurista as Assignee for the Benefit of Creditors of Short Hills Caterers, Inc. In Support of Motion to Dismiss Pending Chapter 7.*

In response, the Petitioning Creditors submit they are clients who booked affairs with Short Hills Caterers and seek assurance that they will be reimbursed as fully as possible.[2] They argue that the Bankruptcy Court is best suited to facilitate their goals of an orderly liquidation in compliance with the Bankruptcy Code's priority scheme largely because the customer deposits will be given priority status. Additionally, they believe that a Chapter 7 bankruptcy would increase the likelihood of recovery of consequential damages. Furthermore, they contend that a Chapter 7 proceeding would save approximately $147,000.00 in administration costs because an Assignee is entitled to a maximum of twenty percent (20%) of the value of the estate. The Petitioning Creditors also suggest that a Chapter 7 proceeding would not result in a waste of resources and efforts already expended. Specifically, depositions have not yet occurred, a sale hearing has not been scheduled in the state court, and an appraisal has only been partially completed.

The Petitioning Creditors highlight the following for the Court's consideration in support of their opposition to the instant motion: (i) the mirrors, chandeliers, refrigerators, freezers and ice makers are fixtures that are the landlord's property upon default on the lease and may not be sold; (ii) BST Realty has had its corporate status revoked and is owned by an "insider" of the corporation; (iii) BST Realty should have been listed as an asset of Short Hills Caterers; (iv) Short Hills Caterers sold its liquor license in August 2007 and has not since obtained a new one; and (v) the Assignee's valuation of the creditors' claims does not account for consequential damages.[3] The Petitioning Creditors also incorporate by reference their reply to the Debtor's opposition to their motion to

---

[2]The subsequent factual statements were gleaned from Petitioning Creditors' *Memorandum of Law in Support of Opposition to Motion to Dismiss Involuntary Case or in the Alternative for Abstention* and the supporting Certifications filed by the Petitioning Creditors and their counsel.

[3]*See Certification of Stuart M. Nachbar In Support of Opposition to Motion for Order to Dismiss Involuntary Case, or in the Alternative, Abstention.*

appoint a Chapter 7 trustee. In that reply, they argue that the ABC avoidance powers only provide a look-back period of four months whereas the Bankruptcy Code provides for a one-year preference period for insiders. For example, Short Hills Caterers sold its liquor license for approximately $500,000.00 and it is the disbursement of such proceeds that the Petitioning Creditors seek to investigate. The Petitioning Creditors suggest that the Assignee has no intention of pursuing such claims as the ABC sale allegedly will result in proceeds to satisfy one hundred percent (100%) of the claims.

At oral argument, the Assignee responded that all claims will be evaluated and that non-inflated claims for consequential damages will be satisfied. The Assignee argues that neither he nor a Chapter 7 Trustee must consider emotional distress claims at inflated rates, the types of claims that are typically contested. He conceded that state law does provide an Assignee with different powers and treatment of deposits than a Chapter 7 bankruptcy but that would be insignificant in the end as creditors in this case will receive a 100% distribution.[4]

## **Discussion**

Abstention is governed by Section 305 of the Bankruptcy Code. Pursuant to Section 305(a) of the Bankruptcy Code:

> The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if-
> > (1) the interests of creditors and the debtor would be better served by such dismissal or suspension;. . . .

11 U.S.C. §305(a) (2008). The party seeking abstention bears the burden of proof. *See In re Mylotte, David & Fitzpatrick*, 2007 Bankr. LEXIS 3572, at *17 (Bankr. E.D. Pa. October 11, 2007); *In re*

---

[4]*May 27, 2008 Tr. _____.*

7

*Sherwood Enters., Inc.,* 112 B.R. 165, 167 (Bankr. S.D. Tex. 1989) (citations omitted). "Whether to dismiss a case or abstain pursuant to *section 305* is committed to the discretion of the bankruptcy court, and is determined based upon the totality of the circumstances." *In re Mylotte, David & Fitzpatrick*, 2007 Bankr. LEXIS 3572, at *17 (emphasis in original). Courts will only abstain or dismiss when its in the best interests of both the debtor and the creditors. *Id.* (citing *In re Pennino,* 299 B.R. 536, 538-39 (B.A.P. 8th Cir. 2003) (other citations omitted)).

According to legislative history a case may be dismissed under Section 305(a):

> [I]f an arrangement is being worked out by creditors and the debtor out of court, there is no prejudice to the rights of creditors in that arrangement, and an involuntary case has been commenced by a few recalcitrant creditors to provide a basis for future threats to extract full payment. The less expensive out-of-court workout may better serve the interests in the case.

H.R. REP. NO. 95-595, 95th Cong. 1st Sess. 325 (1977); S.R. REP. NO. 95-989, 95th Cong. 2d Sess. 36 (1978). The Bankruptcy Appellate Panel for the Ninth Circuit analyzed Section 305(a) in *Eastman v. Eastman*:

> As the statutory language and legislative history demonstrate, the test under section 305(a) is not whether dismissal would give rise to a substantial prejudice to the debtor. Nor is the test whether a balancing process favors dismissal. Rather, the test is whether both the debtor and the creditors would be "better served" by a dismissal.

*Eastman*, 188 B.R. 621, 624-25 (B.A.P. 9th Cir. 1995). Courts often avoid the use of Section 305(a) because the resulting order is not reviewable on appeal pursuant to Section 305(c). 11 U.S.C. § 305(c); *See In re O'Neil Village Personal Care Corp.*, 88 B.R. 76, 80 (Bankr. W.D. Pa. 1988).

Generally, there are two approaches utilized by courts when analyzing abstention relative to an involuntary petition filing. The first is where courts consider whether the following have been satisfied: (1) the petition was filed by a few recalcitrant creditors and that most creditors oppose the

8

bankruptcy; (2) there is a state insolvency proceeding or an out-of-court arrangement pending, and (3) the dismissal is in the best interests of the debtor and all creditors. *See In re RAI Marktg. Servs., Inc.*, 20 B.R. 943, 946 (Bankr. D. Kan. 1982), *In re Audio Visual Workshop, Inc.*, 211 B.R. 154, 161 (Bankr. S.D.N.Y. 1997); *In re Grigoli*, 151 B.R. 314, 319 (Bankr. E.D.N.Y. 1993); *In re Trina Assocs.*, 128 B.R. 858, 867 (Bankr. E.D.N.Y. 1991). A "recalcitrant" creditor is more than a "disgruntled" creditor – the creditor must be motivated by more than just the desire to be repaid what it is owed by the debtor. *See RAI*, 20 B.R. at 946 (finding that creditors' recalcitrance stemmed from prior anti-competitive business dealings with the debtor). Here, the three Petitioning Creditors have not been shown to be recalcitrant and are simply just seeking reimbursement of their deposits but, there is an ABC proceeding pending in the state court.

Several courts have adopted a broader factor analysis for abstention under Section 305(a). *See, e.g.*, *In re 15375 Memorial Corp.*, 382 B.R. 652 (Bankr. D. Del February 15, 2008); *In re Mylotte, David & Fitzpatrick,* 2007 Bankr. LEXIS 3572, at *18; *In re Argus Group 1700, Inc.*, 206 B.R. 737 (Bankr. E.D. Pa. 1996); *In re Mazzocone*, 200 B.R. 568 (Bankr. E.D. Pa. 1996). The exact factors to be considered and the weight to be given each of them is highly sensitive to the facts of each individual case, and courts consider a wide variety of factors to determine whether dismissal is in the best interests of all parties. A non-exclusive list of such factors include:

> (1) economy and efficiency of administration; (2) whether another forum is available to protect the interests of both parties or there is already a pending proceeding in a state court; (3) whether federal proceedings are necessary to reach a just and equitable solution; (4) whether there is an alternative means of achieving the equitable distribution of assets; (5) whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case; (6) whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy

>    process; and (7) the purpose for which bankruptcy jurisdiction has been sought.

*In re Mylotte, David & Fitzpatrick*, 2007 Bankr. LEXIS 3572, at *18 (citing *In re Greene,* 1999 U.S. Dist. LEXIS 14689, *12-13 (E.D. Pa September 27, 1999); *In re Mazzocone*, 200 B.R. 568, 575 (E.D. Pa. 1996) In *re R&A Bus. Assoc., Inc.*, 1999 Bankr. LEXIS 543, *53-54 (Bankr. E.D. Pa. March 8, 1999)).

Significantly, "courts generally dismiss an involuntary case under § 305(a)(1) where the debtor has made an assignment for the benefit of creditors." *In re Cincinnati Gear Co.*, 304 B.R. 784, 785-86 (Bankr. S.D. Ohio 2003); *see In re Mylotte, David & Fitzpatrick*, 2007 Bankr. LEXIS 3572, at *19 ("Typical circumstances for dismissing under § 305(a)(1) include the pendency of proceedings such as assignments for the benefit of creditors. . . .") (citations omitted). Congress appears to have contemplated the use of this "extreme remedy particularly in involuntary cases like this where an alternative arrangement exists for the protection of creditors." *In re Cincinatti Gear*, 304 B.R. at 785-86.

Assignments for the benefit of creditors are sanctioned and governed by New Jersey statute. *See* N.J.S.A. 2A:19-1 to 19-50. The statute provides for an assignee to preside over the marshaling of the Debtor's assets for distribution to creditors. *See* N.J.S.A. 2A:19-1. While the Debtor is allowed to choose the assignee, the assignee must act as a fiduciary to creditors, and is charged with maximizing the funds to be distributed to creditors in equal fashion, not unlike the trustee in a Chapter 7 proceeding. *See* N.J.S.A. 2A:19-1, -14. There is nothing manipulative or improper about an assignment for the benefit of creditors, as seems to be implied by the Petitioning Creditors. Moreover, where prior transactions involve impermissible preferences or fraudulent transfers, the assignee has the <u>power</u> and the <u>duty</u> to bring avoidance or fraudulent transfer actions on behalf of

the creditors. *See* N.J.S.A. 2A:19-14 (emphasis added); *see also Adm'r of Smith v. Wood*, 42 N.J. Eq. 563, 565 (N.J. Ch. 1887) (assignee is bound to exercise duty to avoid fraudulent conveyance for the benefit of creditors). If an assignee refuses to bring such actions when it is warranted, creditors may pursue those actions on their own behalf. *See Kalmus v. Ballin*, 52 N.J. Eq. 290, 294 (N.J. Err. & App. 1894) (holding that a creditor to whom a debt is owed may file an action on his own behalf to avoid fraudulent transfers upon an assignee's failure to perform its fiduciary duty to pursue such claims); *Smith v. Wood*, 42 N.J. Eq. at 565 (assignee must answer to creditors for any loss sustained by assignee's neglect of duty); *Cincinnati Gear*, 304 B.R. at 785-86 (stating that nothing precludes creditors from pursuing fraudulent conveyance actions in state court); *In re Artists' Outlet, Inc.*, 25 B.R. 231, 234 (Bankr. D. Mass. 1982) (holding that a creditor which alleged improprieties in an assignment for benefit of creditors could pursue those allegations in state court).

In the case at bar, the Assignee is a well-known and experienced professional in ABC as well as bankruptcy cases. To date, he has taken the proper measures to secure the premises and marshal the assets. At this juncture, the Assignee believes there will be a 100% recovery for all creditors; thus, there is no benefit to be gained for creditors from a bankruptcy court proceeding under the Bankruptcy Code. Although the Petitioning Creditors argue the benefit of a Chapter 7 Trustee's avoidance powers, the facts before the Court at this time demonstrate that such use is unlikely. Lastly, judicial economy and efficiency warrant the continuation of the ABC proceeding with Steven Z. Jurista as the Assignee. Thus, based on the totality of the circumstances in the instant matter and either analysis effecting Section 305(a), the Court finds that dismissing the involuntary petition is in the best interests of both Short Hills Caterers and its creditors. Accordingly, the Court hereby abstains at this time under Section 305(a) and dismisses the within petition.

**Conclusion**

Based on the foregoing reasons, the instant motion to dismiss the involuntary petition or in the alternative to abstain is hereby granted. Therefore, the motion of the Petitioning Creditors to appoint a Chapter 7 Trustee is hereby deemed moot. An Order in conformance with this Opinion has been entered by the Court and a copy is attached hereto.

/s/ *Donald H. Steckroth*
_____
DONALD H. STECKROTH
UNITED STATES BANKRUPTCY JUDGE

Dated: June 4, 2008